* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly, the Full Commission AFFIRMS with minor modifications the Opinion and Award of Deputy Commissioner Houser.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matters of law the following, which were entered into by the parties at and subsequent to the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS 1. All parties are properly denominated in the above caption. *Page 2 
2. On the date of the injury, December 22, 1997, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On December 22, 1997, an employment relationship existed between plaintiff and defendant.
4. On all relevant dates, Constitution State Service Company was the third-party administrator on the risk.
5. Plaintiff is claiming to have sustained injuries to his head, neck, legs, right wrist and back.
6. Plaintiff's average weekly wage at the time of his injury was such that he is entitled to the maximum compensation rate for 1997 of $512.00.
8. The issues to be determined are as follows:
 a. Whether plaintiff is entitled to permanent partial disability compensation;
 b. Whether plaintiff is entitled to be reimbursed for expenses related to medical treatment; and,
 c. Whether plaintiff is entitled to future medical treatment as a result of the injuries sustained on December 22, 1997.
 * * * * * * * * * * * EVIDENCE
1. The parties stipulated into evidence the following exhibits:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Packet of Medical Records
2. The following individual testified at the hearing before the Deputy Commissioner:
 a. Phillip D. Morris *Page 3 
3. The following depositions were received into evidence following the hearing before the Deputy Commissioner:
 a. Steven Mitchell Freedman, M.D.
 b. Kurt Voos, M.D.
 c. Robert Satterfield, M.D.
 * * * * * * * * * * *
Based upon all the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was fifty years old.
2. Plaintiff worked for defendant as a Shipment Technician. His duties included operating a yard tractor that was used to tow forty-eight and fifty-three foot trailers.
3. On December 22, 1997, while operating his yard tractor, plaintiff was struck by a Waste Industry Dumpster Truck. The impact caused plaintiff to hit the right front of his head on the inside top of the metal cab of his yard tractor. Defendant has accepted the compensability of this incident.
4. Plaintiff testified at the hearing before the Deputy Commissioner that, immediately following his admittedly compensable injury by accident of December 22, 1997, he began experiencing constant and severe headaches and neck pain and sought medical treatment at Nash Healthcare Emergency Room. Plaintiff received multiple stitches for a scalp laceration.
5. Plaintiff's medical records reveal that plaintiff was initially treated by Dr. Hal B. Woodall and that the results of plaintiff's subsequent neurological examinations were normal. *Page 4 
Dr. Pamela J. Whitney, a neurologist, found nothing remarkable during an examination of plaintiff in February 1998 pursuant to plaintiff's reports of continuing headaches, and diagnosed plaintiff as having post-traumatic vascular headaches.
6. Dr. Michael Kushner, also a neurologist, examined plaintiff beginning in March 1998 pursuant to plaintiff's continuing complaints of ongoing neck pain, and diagnosed some irregularities with the C-7 nerve roots. Dr. Kushner referred plaintiff to Dr. Ira M. Hardy, II, a neurosurgeon, for consideration as to whether a decompression surgical procedure was warranted.
7. Plaintiff presented to Dr. Hardy in April and May 1998. Dr. Hardy concluded that surgery was not required and that plaintiff should proceed with conservative treatment. Dr. Hardy opined that plaintiff's neck pain and headaches were the result of a muscular and ligament strain.
8. After returning briefly to the care of Dr. Kushner, plaintiff then pursued pain management treatment with Dr. Daljit S. Buttar for his headaches and neck pain from August 1998 through January 2000. Dr. Buttar conducted nerve studies that revealed that plaintiff was not a surgical candidate, and accordingly treated plaintiff with pain medication, including epidural steroid injections and trigger point injections. At the time of plaintiff's last treatment with Dr. Buttar on January 17, 2000, plaintiff reported persisting headache symptoms and neck and shoulder discomfort, but indicated that his current medications were being helpful.
9. Plaintiff testified at the hearing before the Deputy Commissioner that, as of the hearing date, his headaches had subsided, but that his neck pain had gotten worse and that he was also suffering from left shoulder and arm pain with numbness and lack of feeling in his arm and fingers. However, plaintiff's symptoms have not prevented him from working. *Page 5 
10. By agreement of the parties, on February 11, 2003, plaintiff underwent an independent medical examination by Dr. S. Mitchell Freedman, a neurologist, for a determination as to whether plaintiff had any permanent partial disability rating as a result of his December 22, 1997, injury by accident. According to Dr. Freedman's records concerning the examination, plaintiff reported that his pain was no longer disabling and had substantially resolved some time ago.
11. At the hearing before the Deputy Commissioner, plaintiff testified that he had reported experiencing constant neck pain to Dr. Freedman. Plaintiff further testified that, during the *Page 6 
examination, Dr. Freedman had performed no physical examination of plaintiff and that the evaluation lasted only five to ten minutes. At his deposition, Dr. Freedman testified that the type of appointment he had with plaintiff typically lasts forty-five minutes to an hour, during which time the patient is examined and consulted. Dr. Freedman expressly stated during his testimony that plaintiff's representations regarding the extent and time length of the evaluation were incorrect.
12. Based upon the totality of the evidence of record, the Full Commission finds the testimony of Dr. Freedman concerning the February 11, 2003, examination to be more credible than the testimony of plaintiff. The Full Commission therefore gives greater weight to testimony of Dr. Freedman regarding the circumstances of the February 11, 2003, independent medical examination than it gives to the testimony of plaintiff.
13. Dr. Freedman testified that, prior to the February 11, 2003, independent medical examination, Dr. Freedman reviewed plaintiff's medical records relating to his post-injury treatment at Nash Healthcare Emergency Room and his subsequent treatment with Dr. Woodall, Dr. Whitney, Dr. Kushner, Dr. Hardy, and Dr. Buttar. During the actual independent medical examination, Dr. Freedman's own neurological examination of plaintiff revealed no abnormalities. As a result of the independent medical examination, Dr. Freedman opined that plaintiff was experiencing only minor symptoms with an occasional headache that could be treated with over-the-counter medications. Dr. Freedman further opined that plaintiff had no symptoms suggestive of a compressed spinal cord or active radiculopathy. Regarding plaintiff's future prognosis, Dr. Freedman opined that, given that plaintiff's symptoms had resolved, he would not expect a recurrence of neck pain in the future. Finally, Dr. Freedman opined that plaintiff had no permanent partial disability resulting from the December 22, 1997, accident.
14. Other than the February 11, 2003, independent medical examination, the record of evidence shows that plaintiff did not seek or receive any medical treatment between January 17, 2000, and June 30, 2003.
15. Based upon the totality of the evidence of record, the Full Commission finds credible Dr. Freedman's testimony regarding the February 11, 2003, independent medical examination and Dr. Freedman's opinions arising therefrom. To the extent that plaintiff's testimony at the hearing before the Deputy Commissioner and his statements to physicians following the independent medical examination differ from the testimony of Dr. Freedman concerning plaintiff's history of symptoms following the December 22, 1997, injury, the Full Commission finds plaintiff's testimony and statements not credible.
16. On June 30, 2003, plaintiff sought treatment from Dr. Robert Satterfield, an orthopedic surgeon. Plaintiff reported to Dr. Satterfield that he had experienced chronic neck pain and headaches since his December 22, 1997, accident. Dr. Satterfield was unaware that plaintiff had not sought treatment for his neck for several years prior to that initial appointment. *Page 7 
Dr. Satterfield treated plaintiff on four occasions between June 30, 2003, and January 31, 2005. Thereafter, Dr. Satterfield referred plaintiff to another spine specialist for a second opinion.
17. On the issue of causation, Dr. Satterfield opined that it was more likely than not that plaintiff's neck pain was causally related to the December 22, 1997, accident. However, Dr. Satterfield was also of the opinion that the longer period of time a patient with a back issue does not experience pain, the more likely it would be that a recurrence of pain would be due to a new traumatic event. Dr. Satterfield acknowledged that there are other possible causes for plaintiff's reported neck symptoms and that he could not be one hundred percent certain that the December 22, 1997, accident was the cause of plaintiff's neck symptoms. Furthermore, Dr. Satterfield's causation opinions are based in significant part upon the history of symptoms reported by plaintiff. In light of Dr. Freedman's testimony and the results of his independent medical examination, the Full Commission finds plaintiff's testimony on the issue of his post-injury symptoms to be lacking in credibility. Accordingly, Dr. Satterfield's causation opinion is given significantly reduced weight.
18. Dr. Kurt Voos, another orthopedic surgeon, began treating plaintiff in March 2005. Dr. Voos ordered and reviewed a new myelogram and MRI that revealed evidence of a disc herniation at the C6-C7 level. Dr. Voos initially treated plaintiff with a series of epidural steroid injections and nerve blocks, but ultimately recommended surgery, which plaintiff has testified that he would like to undergo. At his deposition, Dr. Voos testified that the newer diagnostic studies from 2005 revealed findings consistent with the reports on plaintiff's MRI scans from 1998 and 1999, which also showed a problem with the C6-C7 disc. However, Dr. Voos had not examined the actual 1998 MRI scans at the time he examined plaintiff in 2005, and no comparison between the older and the newer studies was conducted by Dr. Voos or by any *Page 8 
radiologist. Dr. Voos has further testified that such a comparison would have been of assistance in forming an opinion as to whether there was any change in the disc between 1998 and 2005. Accordingly, Dr. Voos was unable to give an opinion as to whether the condition of the C6-C7 disc had remained the same over time or whether it had changed in any way.
19. On the issue of causation, Dr. Voos opined that plaintiff's C6-C7 disc condition "can be related" to December 22, 1997, injury by accident. However, the causation opinion of Dr. Voos, like that of Dr. Satterfield, is based in significant part on the history of symptoms reported by plaintiff. Because the Full Commission does not find plaintiff's testimony as to his post-injury symptoms to be credible, the Full Commission likewise gives the causation opinion of Dr. Voos little weight.
20. Based upon the totality of the credible lay and medical evidence of record, the Full Commission finds that plaintiff's neck symptoms subsequent to February 11, 2003, are not the direct and natural result of, or causally related to, his December 22, 1997, injury by accident.
21. Based upon the totality of the credible lay and medical evidence of record, the Full Commission finds that plaintiff has sustained no permanent partial disability as a result of his December 22, 1997, injury by accident.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 22, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Based upon the totality of the credible lay and medical evidence of record, the Full Commission concludes that plaintiff's neck symptoms subsequent to February 11, 2003, are not the direct and natural result of, or causally related to, his December 22, 1997, injury by accident. N.C. Gen. Stat. § 97-2(6). To the extent that plaintiff is entitled to a presumption under Parsons v. Pantry, Inc., 126 N.C. App. 540,485 S.E.2d 867 (1997), that plaintiff's current symptoms are related to his December 22, 1997, injury, defendant has met its burden of proof underParsons through the testimony of Dr. Freedman. Parsons at 542,485 S.E.2d at 869.
3. Based upon the totality of the credible lay and medical evidence of record, the Full Commission concludes that plaintiff sustained no permanent partial disability as the result of his December 22, 1997, injury by accident. N.C. Gen. Stat. §§ 97-2(9), 97-31.
4. As the result of his December 22, 1997, injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred up to and including February 11, 2003, but not thereafter. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim related to his neck condition subsequent to February 11, 2003, must be, and is, HEREBY DENIED, as is his claim for permanent partial disability compensation.
2. Defendant shall pay for all related medical expenses incurred by plaintiff as the result of his December 22, 1997, injury by accident up to and including February 11, 2003, but not thereafter. *Page 10 
3. Each side shall pay its own costs.
This the __ day of May, 2007.
S/____________________
PAMELA T. YOUNG
COMMISSIONER
CONCURRING:
S/____________________
BUCK LATTIMORE
CHAIRMAN
S/____________________
DIANNE C. SELLERS
 COMMISSIONER *Page 1